**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:20-cv-00871-CMA-KLM

BRYCE ABBINK, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

GOOD CHEMISTRY I, LLC, a Colorado limited liability company,

        Defendant.

## DEFENDANT GOOD CHEMISTRY I, LLC'S MOTION TO STAY

Defendant Good Chemistry I, LLC ("Defendant"), by and through its undersigned counsel, respectfully moves this Court for a stay pending the Supreme Court's forthcoming decision in *Facebook, Inc. v. Duguid* ("*Facebook*").[1] Plaintiff Bryce Abbink's ("Plaintiff") claims hinge on the proper interpretation of the definition an automatic telephone dialing system ("ATDS") under the Telephone Consumer Protection Act ("TCPA")—an interpretational question for which there currently exists a split of authority that the Supreme Court will resolve in *Facebook*. A stay pending the Facebook ruling is eminently sensible. It will conserve judicial resources and the parties' resources; it will avoid the possibility that the *Facebook* ruling will nullify months of litigation over issues that prove to be moot; and it will accord with the rulings of numerous courts throughout the country.

---

[1] Pursuant to D.C.Colo.LCivR 7.1(a), counsel for Defendant certifies that counsel has conferred, via both emails and phone, with counsel for Plaintiff regarding the requested stay and is informed that Plaintiff opposes the requested stay.

1

## I.  INTRODUCTION

Plaintiff's putative TCPA class action is based on texts that were allegedly sent to Plaintiff on behalf of Defendant. The crux of Plaintiff's lawsuit depends on his allegation that "[i]n sending the text messages at issue in this Complaint, Defendant utilized an automatic telephone dialing system." (Compl. ¶ 13, Dkt. 1). As noted, however, what constitutes an "automatic telephone dialing system" is currently the subject of a circuit split, and the resolution of that split will likely be dispositive of Plaintiff's claims here.

On July 9, 2020, the Supreme Court granted certiorari in *Facebook* to address the definition of an ATDS. *Facebook, Inc. v. Duguid*, 2020 WL 3865252 (No. 19-511) (July 19, 2020)*.* The specific question before the Supreme Court is "[w]hether the definition of an 'automatic telephone dialing system' in the Telephone and Consumer Protection Act of 1991 encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" Pet. for Writ of Cert., *Facebook,* 2019 WL 5390116 at *ii (Oct. 17, 2019) (No. 19-511)*.*

This issue of the proper definition of an ATDS is at the heart of the current circuit split. The Third, Seventh, and Eleventh Circuits have adopted a restrictive definition that defines an ATDS as a platform that places calls or texts by randomly or sequentially generating numbers. *See Gadelhak v. AT&T Svcs., Inc.*, 950 F.3d 458, 469 (7th Cir. 2020); *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1306 (11th Cir. 2020); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3rd Cir. 2018). By contrast, the Second, Sixth, and Ninth Circuits have adopted a broader definition of an ATDS—namely, one that also encompasses devices that merely automatically dial telephone numbers from a stored

list of numbers. *See Allan v. Penn. Higher Educ. Assistance Agency*, No. 19-2043, 2020 WL 4345341, at *5 (6th Cir. July 29, 2020); *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 284 (2nd Cir. 2020); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018). This Circuit has not yet addressed the definition of an ATDS.

Although there is no way to predict the highest court's ruling with certainty, the current textualist Supreme Court will likely follow the *Gadelhak/Glasser* approach in holding that the TCPA's ATDS definition should be construed quite literally: for equipment to qualify as an ATDS, it must employ a "random or sequential number generator." *See, e.g., Gadelhak*, 950 F.3d at 469. Regardless of the Supreme Court's ruling, a stay pending the Supreme Court's *Facebook* ruling is in the interests of the parties and of this Court. As noted by a district court recently granting a motion to stay,

> Because such a decision [in *Facebook*] would illuminate an unsettled area of the law that is key to this case, and because a stay will promote judicial economy, conserve party resources, and increase the likelihood of a just and correct outcome, the Court determines that a stay of these proceedings is warranted.

*Creasy v. Charter Communications, Inc.*, No. CV 20-1199, 2020 WL 5761117, at *7 (E.D. La. Sept. 28, 2020). The same analysis holds true here. The *Facebook* decision will illuminate an unsettled question that the Tenth Circuit has yet to address and will have immediate bearing on the viability and scope of Plaintiff's claims. At the very least, the decision will clarify the relevant issues for discovery and class certification.

Notably, in the three months since the Supreme Court granted certiorari in *Facebook*, dozens of other courts have stayed TCPA class litigation pending the *Facebook* ruling. (*See* **Exhibit 1** hereto for a list of stays.) In fact, this Court recently granted a stay

3

in a TCPA class action pending the resolution of another TCPA case that was before the Supreme Court last term (*Barr v. American Association of Political Consultants, Inc.,* 140 S. Ct. 2335 (2020)), where it was "reasonable to expect a hearing and decision by the end of the [Supreme Court's] following term." *Mehaffey v. Navient Solutions, LLC*, No. 19-cv-00197-REB-NRN, 2020 WL 5260209, at *2 (D. Colo. Feb. 13, 2020).

## II.     RELEVANT BACKGROUND

### A.     Plaintiff's Claim Is Based on the TCPA's ATDS Provision.

On March 31, 2020, Plaintiff filed his complaint asserting a cause of action for violation of the TCPA on behalf of himself and a putative class of similarly situated individuals. Plaintiff alleges that he received three unsolicited texts from Defendant[2] ("Texts") and that the Texts advertised the availability of Defendant's products. (Compl. ¶¶ 20-23, 26, Dkt. 1). Plaintiff further alleges that the Texts were sent using an ATDS (*Id.* ¶ 13), as were other texts that he alleges were sent to other consumers. (*Id.* ¶ 27).

Plaintiff acknowledges that he was a member of Good Chemistry's Loyalty Program. (*Id.* ¶ 19). Indeed, the Texts were sent to Plaintiff precisely because he was on Good Chemistry's Loyalty Program member list. (Declaration of Toby Nuber ("T. Nuber Decl.") ¶ 8, **Exhibit 2** hereto). In fact, the Texts were sent based on a stored list of phone numbers provided to Good Chemistry by such members. (*Id.* ¶¶ 6-8).

---

[2] Although named Defendant, Good Chemistry I, LLC, never sent nor authorized any texts to Plaintiff or any other potential class member, Sweetwater Partners, LLC d/b/a Good Chemistry ("Good Chemistry") shows record of having sent the texts that are referenced in Plaintiff's complaint. (Declaration of Toby Nuber ¶¶ 4, 8, Ex. 2).

4

This is important because, as explained below, under the narrow *Gadelhak/Glasser* interpretation favored by at least three circuit courts (and by the sole district court in the Tenth Circuit to consider the issue), such texts would not be actionable under the TCPA as they were not sent from a dialer using a random or sequential number generator—that is, they were not sent using an ATDS as defined by courts adopting the narrow definition of an ATDS. Under the expansive *Marks* definition adopted by three other circuits, however, such texts would be potentially actionable. Thus, the question of whether a calling platform that sends texts based on a stored list of telephone numbers is an ATDS is a central—and almost certainly dispositive—issue in this putative class litigation.

### B.    Supreme Court Grants Certiorari to Clarify the Definition of an ATDS.

The TCPA "prohibits any person, absent the prior express consent of a telephone-call recipient, from 'mak[ing] any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a paging service [or] cellular telephone service.'" *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666–67 (2016) (quoting 47 U.S.C. § 227(b)(1)(A)(iii)). The TCPA defines an ATDS as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1).

Thus, a central issue in TCPA cases is whether an ATDS was used to place calls or send text messages. As noted, a critical circuit split has emerged on this issue, with one side adopting the narrow *Gadelhak/Glasser* definition and the other side adopting the broader *Marks* definition. *See, e.g., Duran*, 955 F.3d at 281 ("A split has recently emerged on precisely this question, with several Courts of Appeals reaching different conclusions

5

on whether an ATDS can pull numbers from a stored list when it automatically dials, or whether it must randomly or sequentially generate those numbers.").

The Supreme Court has set oral arguments for *Facebook* on December 8, 2020, and is expected to issue its ruling by late June, 2021. *See Creasy*, 2020 WL 5761117, at *7 ("Oral argument in *Facebook* has been set for December 8, 2020, and the Court will presumably enjoy a full complement of Justices by the end of October Term 2020. Accordingly, a 2021 decision in *Facebook* is probable."). Thus, much needed guidance from the high court on this issue will likely be forthcoming within the next nine months.

### III.   ARGUMENT AND AUTHORITIES

#### A.   Legal Standard on a Motion to Stay

This Court has the inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *In re Calder*, 973 F.2d 862, 868 (10th Cir. 1992) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). More specifically, "[t]he Court has broad discretion to stay proceedings as incidental to its power to control its own docket." *Harris v. City and County of Denver*, 2019 WL 2491647-MEH, at *1 (D. Colo. June 14, 2019).

In evaluating a request for a stay, the following five factors guide the Court's determination: "(1) plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendant[]; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *String Cheese Incident, LLC v. Stylus Shows, Inc.*, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006). Significantly here, "[i]t is not uncommon for lower

courts to stay proceedings in pending matters when cases containing material issues are awaiting determination by the United States Supreme Court." *Burke v. Alta Colleges*, Inc. 2012 WL 502271, at *2 (D. Colo. Feb 15, 2012) (applying the *String Cheese Incident* factors to find that a stay was appropriate).

## B.     All Relevant Considerations Weigh in Favor of Granting a Stay.

All relevant factors weigh in favor of granting a stay for the finite time that the Supreme Court hears arguments and issues a ruling in *Facebook*. As discussed in greater detail below, the Supreme Court's ruling will clarify the central—and potentially dispositive—question of law as to what constitutes an ATDS under the TCPA. A stay of these proceedings pending such clarification will serve the interests of Plaintiff, Defendant, the Court, the public, and judicial economy.

### 1.     Plaintiff will not suffer undue prejudice.

Here, Plaintiff will not be unduly prejudiced by a stay. Indeed, such a stay likely stands to delay Plaintiff's potential recovery by less than nine months. The "length of the stay is neither indefinite nor immoderate." *Boise v. ACE USA, Inc.*, No. 15-CIV-21264, 2015 WL 4077433, at *6 (S.D. Fla. July 6, 2015). Further, this case is still in the very preliminary stages, and no significant action has yet been undertaken by either party. In fact, Plaintiff has yet to serve discovery on Defendant, and the only activity that has occurred in the case since Plaintiff filed his complaint in March of this year has been the filing of Defendant's

Answer, the initial scheduling conference, and the parties' exchange of their F.R.C.P. 26(a)(1) disclosures.[3]

Significantly, Plaintiff does not allege that he continues to receive texts from Defendant, nor has he requested any injunctive relief or other time-sensitive remedies. *Mehaffey*, 2020 WL 5260209, at *2 (granting stay where plaintiff made "no request [] for injunctive relief or other time-sensitive remedies that might be negatively impacted by a stay" because "[g]iven the lack of any other harm, this mere delay, although not wholly inconsequential, does not by itself weigh against the imposition of a stay"). Another district court issued a decision last week rejecting a plaintiff's contention that she would be harmed by a stay pending the *Facebook* ruling, holding that:

> [Plaintiff] does not allege an ongoing injury, and the risk of harm to [Plaintiff] is small considering the likely length of the stay and the fact that [Defendant] is 'now aware of its obligations and should have already instated a litigation hold to preserve documents that may be relevant to this litigation.

*Sealey v. Chase Bank (U.S.A.), N.A.* No. 19-cv-07710, 2020 WL 5814108, at *2 (N.D. Cal. Sept. 29, 2020). Thus, the first factor weighs in favor of a stay.

### 2. **The burden on Defendant weighs in favor of a stay.**

Without a stay, there is a significant risk that Defendant would be put to the burden of many months of further litigation only to have the Supreme Court determine that the

---

[3] Courts have found plaintiffs' claims of potential harm to be unpersuasive where there is merely a delay in recovery of alleged money damages. *See, e.g.*, *In re Settlement Facility Dow Corning Trust*, No. 14-1090, 2014 WL 4824822, at *1 (6th Cir. March 31, 2014) (denying motion for stay where alleged harm was primarily monetary harm). This is particularly true where, as here, the plaintiff has suffered no actual damage and seeks recovery of a statutory damages only. *See* 47 U.S.C. § 227(b)(3).

*Gadelhak*/*Glasser* definition of an ATDS is the correct one—which outcome would likely be fatal to Plaintiff's case, as explained in the next section. *See Stone v. Sterling Infosystems, Inc.*, No. 2:15-cv-00711, 2015 WL 4602968, at *2 (E.D. Cal. Jul. 29, 2015) ("The Court sees no reason why Plaintiff should be allowed to conduct discovery on this large class thereby forcing Defendant to incur unnecessary expenses, until it can be established that this case will be proceeding forward.").

Additionally, discovery is scheduled to close on May 28, 2021. (Initial Scheduling Order 6, ¶ 8.b, Dkt. 17). This means that discovery in this case will have concluded before the Supreme Court resolves the question of what constitutes an ATDS under the TCPA. Without a stay, Defendant will be subjected (and Plaintiff will need to propound) to wide-ranging discovery into the subject dialing system without even knowing what ultimately will be the legal standard for an ATDS.

Of particular note is the deadline for expert disclosures. The case schedule in this matter currently contemplates that the parties will disclose expert reports by March 14, 2021. (*Id.* at 6-7, ¶ 8.d). This includes potential expert testimony as to whether the Texts were sent using an ATDS. (*Id.* ¶ 8.d.ii ("Defendant anticipates that . . . fields of expert testimony shall include those fields typically relevant in TCPA class litigation, including . . . [w]hether messages at issue were made . . . on a communication/contact system with current or potential autodialer capacity."). Until the Supreme Court resolves the split of authority on what constitute an ATDS, however, it is entirely unclear to which standard the expert testimony should be addressed. Indeed, each party would likely need to prepare two separate expert opinions addressing the two most likely outcomes of the *Facebook*

ruling, and there is always the possibility that the Supreme Court will adopt a "third way" definition. In short, the second factor weighs in favor of a stay.

### 3. The convenience to the Court weighs in favor of a stay.

Staying these proceedings pending a Supreme Court decision that could either (a) moot Plaintiff's claims or (b) drastically alter the scope and nature of fact discovery and expert discovery is an eminently logical means to conserve finite judicial resources. In order to resolve the merits of Plaintiff's TCPA claim, this Court will need to determine whether the subject texts were sent from an ATDS (often referred to in the case law as an "autodialer"). This in turn will require the Court to address the statutory interpretation question that has vexed numerous courts and that is the precise subject of the *Facebook* appeal. The relevant history of this interpretation question is explained briefly below.

The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a). This "awkward statutory wording" raises a "difficult question" of statutory construction—namely, whether a dialing platform that only dials (including sending texts to) phone numbers stored in a customer database qualifies as an ATDS. *Gadelhak*, 950 F.3d at 460–61.

Some historical context will be helpful in understanding why this definitional question is still unresolved nearly 30 years after Congress enacted the TCPA in 1991. When the TCPA was first enacted, federal courts interpreted the statute to cover only "devices that randomly or sequentially generated telephone numbers and dialed those numbers, or stored them for later dialing." *Glasser*, 948 F.3d at 1307. Ultimately, however, the Federal

10

Communications Commission ("FCC") was charged with promulgating regulations implementing the TCPA's requirements, and thus its definition of an ATDS was given presumptive weight. 47 U.S.C. § 227(b)(2).

The FCC's early regulations gave a narrow reading to the term "ATDS." For example, a 1992 declaratory order from the FCC "explained that certain technologies would not qualify as auto-dialers under the Act because the numbers these devices called 'are not generated in a random or sequential fashion'—a baseline for all covered calls." *Glasser*, 948 F.3d at 1308 (quoting *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8776 (1992)). Beginning in 2003, however, the FCC began expanding its definition of an ATDS to encompass new telemarketing technology, including "predictive dialers" that called lists of predetermined potential customers. *Id.* Specifically, and relevant to the current circuit split, the FCC expanded its definition of an ATDS "to extend to equipment that merely dialed numbers 'from a database of numbers'—that merely stored numbers and called them." *Id.*

In 2015, the FCC issued another order that sought to further clarify the FCC's ATDS definition. *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7974 (2015). In 2018, however, the Circuit for the District of Columbia vacated the FCC's 2015 Order and set aside the FCC's by-then conflicting interpretations of an ATDS. *See ACA Int'l v. FCC*, 885 F.3d 687, 703 (D.C. Cir. 2018). Since the *ACA* decision, the courts have been left to "interpret the statute's text as though for the first time." *Gadelhak*, 950 F.3d at 463; *see also Marks*, 904 F.3d at 1049 ("Because the D.C. Circuit

11

vacated the FCC's interpretation of what sort of device qualified as an ATDS, only the statutory definition of ATDS as set forth by Congress in 1991 remains.").

In the two years since the *ACA* decision, six circuits have addressed the question whether a device that dials numbers from a stored list qualifies as an ATDS. As noted, three circuits have held that a device that "exclusively dials numbers stored in a customer database" does not qualify as an ATDS. *Gadelhak*, 950 F.3d at 460; *Glasser*, 948 F.3d at 1306; *Dominguez*, 894 F.3d at 121. Three other circuits, however, reached a different conclusion, holding that a system that stores phone numbers and dials them automatically can potentially constitute an ATDS. *Allan*, 2020 WL 4345341 at *5; *Duran*, 955 F.3d at 284; *Marks*, 904 F.3d at 1053.

Even a cursory examination of the above decisions will reveal the confounding interpretative issues presented by the statutory language that has produced this circuit split over what constitutes "equipment which has the capacity—(A) to store or produce telephone numbers to be called; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). *See also Gadelhak*, 950 F.3d at 460 ("The wording of the provision that we interpret today is enough to make any grammarian throw down her pen."); *Glasser*, 948 F.3d at 1306 ("Clarity, we lament, does not leap off this page of the U.S. Code."); *Marks*, 904 F.3d at 1051 ("After struggling with the statutory language ourselves, we conclude that it is not susceptible to a straightforward interpretation based on the plain language alone.").

Absent a stay, this Court will be required to wrestle with the same question. Like the dialers at issue in virtually all TCPA litigation today, the Texts here were not generated by a dialer using a random or sequential number generator. (T. Nuber Decl. ¶ 9, Ex. 2).

Instead, the Texts were sent from a stored list of phone numbers belonging to members of Good Chemistry's Loyalty Program. (*Id.* ¶ 8). Under the *Gadelhak/Glasser* interpretation of the TCPA, such a dialer would not constitute an ATDS, and, thus, Plaintiff's claims would fail entirely. Under the more expansive interpretation adopted by *Marks* and its progeny, the dialer used to send the Text may in fact constitute an ATDS, thereby creating potential liability, depending on whether Plaintiff proves the remaining elements of his TCPA claim.

In short, the Supreme Court's upcoming decision in *Facebook* could very well be dispositive of all the claims in this case, especially if the Supreme Court follows the *Gadelhak/Glasser* interpretation of an ATDS. If the Supreme Court follows this definition adopted by a majority of courts, then additional discovery or litigation would only be needed on the issue of whether the system that was used to text Plaintiff was an ATDS.

However, even if Plaintiff somehow disputes that this is dispositive, the decision in *Facebook* will significantly impact the issues in this case. The *Facebook* decision will finally give certainty to what discovery, if any, will be required on this threshold issue. The Court—and parties—will have guidance as to what Plaintiff must show to prove that the Texts were sent with an ATDS. In sum, the third factor weighs in favor of granting a stay.

### 4. The interests of non-parties to the litigation are not a factor.

The fourth factor is effectively neutral here as the case does not appear to implicate the interests of non-parties to the litigation.

### 5. A stay will serve the public interest.

There is a public interest in judicial economy and efficiency, which will be promoted by a stay of these proceedings. *See, e.g.*, *Cross Media Works, Inc. v. Reid*, No. CIV-10-

13

401-D, 2010 WL 4811758, at *4 (W.D. Okla. Nov. 19, 2010) (staying proceedings pending resolution of another case in the interest of judicial economy and to avoid duplicative efforts). To move forward with this case while *Facebook* is pending would potentially waste the resources of both the parties and this Court. *See, e.g., Wright v. Exp Realty, LLC*, No. 6:18-cv-1851-Orl-40EJK, ECF No. 108 (M.D. Fla. Aug. 12, 2020) (granting a stay, noting that "any proceedings before the Supreme Court issues guidance on the definition of an ATDS—a material issue in the instant case—will be, among other things, a waste of judicial resources and a waste of the parties' time and energy."). A stay, on the other hand, will conserve such resources.

A stay is particularly appropriate here because this is a putative nationwide class action that—if it proceeds as most class litigation does—will morph into a massive and complex endeavor. (*See* Compl. ¶ 27, Dkt. 1 (alleging that the class numbers "hundreds if not thousands")). The public interest is not served when courts are devoting their limited resources to potential class claims when the Supreme Court may issue a decision in the near future that radically alters the potential for any of Plaintiff's claim to survive at all.

Given the potential scope of this litigation and the resources that could be saved by awaiting the Supreme Court's guidance, this final factor weighs strongly in favor of a stay.

### C. Tenth Circuit Has Not Opined on the ATDS Issue, But Should It Do So, This Case Will Likely Go Away.

As noted, the Tenth Circuit has yet to address the definition of an ATDS. If the Tenth Circuit were to address the ATDS issue while *Facebook* is pending, at least one court has predicted that it would rule against Plaintiff's position and affirmatively resolve this case in favor of Defendant. *See Hampton v. Barclays Bank Del.*, No. 18-4071-DDC-ADM, 2020

WL 4698476 (D. Kan. Aug. 13, 2020). The district court in *Hampton* undertook an in-depth analysis in assessing whether a dialing platform that dials numbers stored in a customer database constitutes an ATDS. Noting at the outset that "the Tenth Circuit hasn't decided whether devices that exclusively dial numbers stored in a customer database qualify as automatic telephone dialing systems," the court then surveyed the history of the circuit split, including the history of the FCC's guidance on an ATDS and the *Glasser* and *Gadelhak* decisions. *Id.* at *24-28.

Ultimately, the *Hampton* court predicted that the Tenth Circuit "would take the same approach as the Seventh and Eleventh Circuits in *Gadelhak* and *Glasser*," which "cases held that devices that exclusively dial numbers stored in a customer database do not qualify as autodialers for purposes of the TCPA." *Id.* at *28. Thus, the court granted summary judgment, finding that the plaintiff's TCPA claim failed. *Id.* at *29. Like Good Chemistry's texting platform, the texting platform at issue in *Hampton* dialed only "phone numbers taken from a database of customers and thus lacked the capacity to function as an ATDS." *Id.* at *30. In short, whether the Tenth Circuit adopts the *Gadelhak*/*Glasser* approach or whether the Supreme Court does so in *Facebook*, the outcome of cases like the instant one will be clear: a dialing system that texts numbers from lists of customer records will not constitute an ATDS, and texts sent by such a dialer will not be actionable under the TCPA.

## IV. CONCLUSION

For the reasons set forth above, this Court should grant Defendant's Motion to Stay this action pending the Supreme Court's decision in *Facebook*.

Respectfully submitted, this 9th day of October, 2020.

                                              */s/ Eric Job Seese*
                                              Eric Job Seese (#48379)
                                              Hall, Estill, Hardwick, Gable,
                                              Golden & Nelson, P.C.
                                              1600 Stout Street, Suite 1100
                                              Denver, CO 80202
                                              Telephone: 720.512.5820
                                              Facsimile: 918.594.0505
                                              jseese@hallestill.com

                                              */s/ John T. Richer*
                                              John T. Richer, Oklahoma Bar No. 19554
                                              Hall, Estill, Hardwick, Gable,
                                              Golden & Nelson, P.C.
                                              320 South Boston Avenue, Suite 200
                                              Tulsa, OK  74103-3706
                                              Telephone (918) 594-0400
                                              Facsimile (918) 594-0505
                                              Email: jricher@hallestill.com

                                              **Attorneys for Good Chemistry I, LLC**

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of October, 2020, a true and correct copy of the foregoing document was e-filed with the Court via the CM/ECF system and thereby served on the following:

Steven L. Woodrow
Patrick H. Peluso
Taylor T. Smith
Stephen A. Klein
WOODROW & PELUSO, LLC
3900 E. Mexico Avenue, Suite 300
Denver, CO 80210
*ATTORNEYS FOR PLAINTIFF*

and, pursuant to D.C.COLO.LCivR 6.1(c), a true and correct copy of the foregoing document was served via email on:

Good Chemistry I, LLC
toby@goodchem.org

*s/ Caryl L. Septon*
Caryl L. Septon